*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. HARDY, Minor.

UNPUBLISHED
August 18, 2025
2:13 PM

No. 373431
Macomb Circuit Court
Family Division
LC Nos. 2022-000113-NA;
      2022-000114-NA;
      2022-000115-NA;
      2023-000186-NA

*In re* FORTUNE/HARDY, Minors.

No. 374037
Macomb Circuit Court
Family Division
LC Nos. 2022-000112-NA;
      2022-000113-NA;
      2022-000114-NA;
      2022-000115-NA;
      2023-000186-NA

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father and respondent-mother appeal as of right the trial court's order terminating their respective parental rights to their minor children. In Docket No. 373431, respondent-father's parental rights to MH1, MH2, MH3, and TLH were terminated under MCL 712A.19b(3)(c)(*i*) (conditions that led to removal still existed and were unlikely to be remedied in a reasonable period of time), (c)(*ii*) (other conditions that would have led to removal

---

[1] *In re Hardy*, unpublished order of the Court of Appeals, entered May 1, 2025 (Docket Nos. 373431 and 374037).

-1-

arose and the parent failed to remedy after a reasonable period of time), (g) (parent was financially able to care for child but failed to do so), and (j) (reasonable likelihood of harm to child). In Docket No. 374037, respondent-mother's parental rights to JF, MH1, MH2, MH3, and TLH were terminated under MCL 712A.19b(3)(c)(*i*), (c)(*ii*) and (j). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent-father is the legal father of MH1, MH2, MH3, and TLH. Respondent-mother's eldest child, JF, has a different father who has not appealed the termination of his parental rights. TLH was born on July 24, 2023 during the pendency of these proceedings.

On April 3, 2022, Children's Protective Service ("CPS") received a report that MH2 had been brought to McLaren Macomb Hospital, where he tested positive for tetrahydrocannabinol ("THC"). He was acting lethargic and had scratches on his neck. There were reports that respondent-mother had left JF, MH1, MH2, and MH3 unsupervised. On May 12, 2022, petitioner, the Department of Health and Human Services ("DHHS"), petitioned to remove the children from respondent-mother's home because it was contrary to their welfare to remain in the home. The trial court authorized the petition, and the children were removed from the home the same day. JF and MH1 were placed in separate foster care homes. MH2 and MH3 were placed together in a foster home.

At a pretrial hearing, both respondents entered pleas of no contest to the allegations in the petition. Respondent-father and respondent-mother were to undergo a substance-abuse assessment, psychological evaluations, random drug screens, therapy, and parenting education, and to have housing and employment. Initially, respondent-mother struggled with her mental health and did not consistently take her prescribed medication. Respondent-mother started to make moderate progress on her parent-agency agreement by attending therapy and her parenting times. Respondent-father initially complied with his parent-agency agreement and did well with the children during his parenting times.

Respondent-mother gave birth to TLH in July 2023, and TLH was not immediately removed from respondent-mother and respondent-father's care. On September 18, 2023, the trial court ordered the return of the other four children to respondents' care.

In October 2023, DHHS workers became aware of police reports regarding domestic violence between respondent-mother and respondent-father. The police were called to respondent-mother's residence multiple times within one week, including in response to a report that neighbors could hear respondents verbally and physically fighting. During one of the police responses to respondent-mother's home, they found the children unsupervised. When a CPS worker was present in the home to remove the children, there was little to no food and the home was in a deplorable condition. Soiled clothing and diapers were left on the floor, and there was a strong odor of urine and feces upstairs.

Within two weeks of the court order returning the children, they were re-removed from respondents' care. All five children were then placed with a maternal aunt.

The trial court held hearings for each respondent regarding TLH. Respondents entered pleas of no contest to allegations made in the petition for the removal of TLH, and the trial court authorized the petition. Additionally, because new allegations of domestic violence were made, the trial court ordered respondents to comply with services for domestic violence in addition to the services required in their original parent-agency agreements.

After the second removal, respondent-mother and respondent-father were both referred for domestic-violence counseling, but both refused to participate. Both respondents' participation in parenting time decreased. From approximately April or May 2024 to September 2024, respondent-mother stopped attending parenting time. When she resumed parenting time, respondent-mother struggled to interact with her children and to redirect them. She was verbally abusive toward DHHS staff and physically assaulted one staff member while the staff member was holding TLH. At the visit in which she assaulted a staff member, her blood alcohol level tested at 0.03%. Thereafter, her parenting time was suspended. Starting in April 2024, respondent-father would not respond to DHHS workers and stopped attending parenting times.

Petitioner filed to terminate respondent-father and respondent-mother's parental rights on October 29, 2024. At the time of the combined termination hearing, the children were doing well in their placement with their maternal aunt. However, the aunt was only willing to adopt JF. Respondent-mother was incarcerated for a charge of felonious assault on her neighbor. Respondent-father had started working at a thrift store approximately a week before the hearing; however, he was alternating living out of his car and at his brother's house. A bench warrant was pending for respondent-father's arrest in relation to domestic violence involving respondent-mother. The trial court terminated both respondent's parental rights on November 12, 2024. These consolidated appeals followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's determinations that at least one statutory ground for termination was proven by clear and convincing evidence and that termination was in a child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). Under the clearly erroneous standard, a trial court's decision must be "more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

## III. STATUTORY GROUNDS FOR TERMINATION

Both respondents argue that the record does not support the trial court's determination that there were statutory grounds to terminate their parental rights. We disagree.

The trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) and respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). These statutory grounds state as follows:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent. [MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g) and (j).]

If this Court holds that the trial court properly concluded that one statutory ground existed for termination, this Court need not address the additional grounds for termination. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). We address each respondent in turn.

## A. RESPONDENT-FATHER

Respondent-father argues that the trial court erred in finding that termination of his parental rights was appropriate under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), (j), and (k)(*iii*).[2] We disagree.

---

[2] We note that it is unclear from the appellate record whether respondent-father challenges the termination of his parental rights only to MH1 or to all of his children. For this reason, we address respondent-father's arguments as made in relation to each of his children.

As an initial matter, we note the statement of questions presented in respondent-father's brief on appeal is not representative of respondent-father's arguments. According to respondent-father's statement of questions presented, the trial court held that MCL 712A.19b(3)(c)(*ii*), (g), (j), and (k)(*iii*) were not found by clear and convincing evidence. This is incorrect, as the trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). MCL 712A.19b(3)(k)(*iii*) was not raised as a ground for termination at any point.

Arguments that are not raised in the statement of questions presented are considered waived for appellate review. *People v Lowrey*, 342 Mich App 99, 119 n 5; 993 NW2d 62 (2022). Although respondent-father substantively argues that the statutory ground in MCL 712A.19b(3)(c)(*i*) was not met, he did not identify (c)(*i*) as a statutory ground in his statement of the questions presented, therefore waiving any arguments as to this ground. *Id.* Additionally, although respondent-father identified (c)(*ii*) as a statutory ground in his statement of the questions presented, he made no substantive arguments related to this ground on appeal. Thus, he has effectively abandoned any argument as to (c)(*ii*). See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). Because respondent-father has either waived or abandoned his arguments regarding (c)(*i*) and (c)(*ii*), he necessarily cannot succeed in his arguments that there were not statutory grounds to terminate his parental rights. See *In re HRC*, 286 Mich App at 461.

Even if respondent-father had not waived and abandoned this issue on appeal, we would conclude that termination of his parental rights was appropriate under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*). Termination under MCL 712A.19b(3)(c)(*i*) is proper when "182 or more days have elapsed since the issuance of an initial dispositional order" and clear and convincing evidence establishes that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

In this case, clear and convincing evidence established grounds for terminating respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*). More than 182 days elapsed between the issuance of the initial disposition order for MH1, MH2, and MH3 on June 2, 2022, and the termination of respondent-father's parental rights on November 12, 2024. Additionally, more than 182 days elapsed between the issuance of the initial disposition for TLH on January 18, 2024, and the termination of respondent-father's parental rights.

The barriers that led to adjudication, such as substance abuse, lack of adequate housing, lack of parenting skills, lack of financial support, and criminal activity continued to exist without a reasonable likelihood that respondent-father would rectify them considering the children's ages. Early in this case, respondent-father made progress with some of these barriers. He attended parenting time and engaged appropriately with his children. The record reflects that he engaged in mental-health and substance-abuse therapy; however, he did not provide proof of participating in those services and could not show what benefit he received from them. After the re-removal of the children, the progress respondent-father had made regressed. In April 2024, respondent-father stopped communicating with the DHHS and stopped attending parenting time.

At the time of termination, the evidence established that respondent-father had not attended parenting time in seven months and did not attend drug screenings. He only started working at a local thrift store a week before the termination hearing and remained homeless. Respondent-father

stated that he could get housing and care for his children without respondent-mother if he was given another 90 days. Even if he found suitable housing for his children in that time, he had no other plans to care for his children and had failed to provide for them financially throughout the proceedings. The record further reflected that the caseworker had spoken to him approximately one and a half years before the termination hearing about leaving respondent-mother and caring for the children on his own, which he failed to do. Finally, a bench warrant for his arrest was pending at the time of the hearing.

Given the documented lack of progress, we are not left with a definite and firm conviction that the trial court erred when it found no reasonable likelihood existed that the conditions that led to the adjudication would be rectified by respondent-father within a reasonable time considering the children's ages. See *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). ("A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody."). Therefore, the trial court did not clearly err by finding that clear and convincing evidence established grounds for termination of respondent-father's parental rights under MCL 712A.19b(3)(c)(*i*).

Likewise, termination was proper under MCL 712A.19b(3)(c)(*ii*). Termination is proper under this statutory ground when "182 or more days have elapsed since the issuance of an initial dispositional order," and the trial court finds by clear and convincing evidence that "[o]ther conditions exist that cause the child to come within the court's jurisdiction" and those "conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*ii*). As previously noted, more than 182 days have elapsed between the initial dispositions for each child and the termination of respondent-father's parental rights. The condition that arose after respondent-father's adjudication was domestic violence.

In this case, the trial court became aware of domestic violence between respondent-mother and respondent-father after the children had been removed from their care and ordered both parents to engage in services for domestic violence. Respondent-father was referred for domestic-violence counseling, which recommended a 16-week batterer's intervention program. Respondent-father did not attend the program. At the time of the termination hearing, there was an unresolved warrant out for respondent-father's arrest for a domestic-violence charge involving respondent-mother.

Respondent-father argues that he was willing to parent without respondent-mother, which he asserts would reduce the children's exposure to domestic violence. However, no longer living with respondent-mother does not mean that respondent-father's behavior would cease and all concerns of domestic violence would be remedied. Respondent-father appeared to be unwilling to address his behavior, and therefore, there is no reasonable likelihood that it would change regardless of whether or not he is in a relationship with respondent-mother.

This presents a risk of physical, mental, and emotional harm to the children because they may be exposed to or suffer from domestic violence. Given the unaddressed domestic violence, we are not left with a definite and firm conviction that the trial court erred when it found that no reasonable likelihood existed that this condition would be rectified within a reasonable time considering the children's ages. Therefore, the trial court did not clearly err by finding that clear

and convincing evidence established grounds for termination of respondent-father's parental rights under MCL 712A.19b(3)(c)(*ii*).

Because we conclude that termination was appropriate under either MCL 712A.19b(3)(c)(*i*) or (c)(*ii*), we need not and do not address any additional statutory grounds for termination. *In re HRC*, 286 Mich App at 461.

## B. RESPONDENT-MOTHER

Respondent-mother argues that the trial court erred in finding grounds to terminate her parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). We disagree.

In this case, clear and convincing evidence established grounds for terminating respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*). More than 182 days elapsed between the issuance of the initial disposition order for JF, MH1, MH2, and MH3 on June 2, 2022, and the termination of respondent-mother's parental rights on November 12, 2024. Additionally, more than 182 days elapsed between the issuance of the initial disposition for TLH on November 16, 2023, and the termination of her parental rights. The barriers that led to adjudication, such as substance abuse, mental health, lack of parenting skills, lack of financial support, and criminal activity continued to exist without a reasonable likelihood that respondent-mother would rectify them considering the children's ages.

Respondent-mother struggled with her mental health throughout the case. She had undergone several psychological evaluations; however, she did not sign a release or otherwise provide proof that she underwent those evaluations. She did not consistently go to therapy or take her medications. Her therapist had reported that respondent-mother only saw therapy as a means to get her children back, indicating that she did not benefit from the therapy she participated in. At the termination hearing, it was noted by the lawyer-guardian ad litem and the trial court that respondent-mother was hyperverbal, suggesting that she was not currently managing her mental health.

Respondent-mother also struggled to parent her children appropriately throughout the case and could not provide proper care for all five children at once. When the children were first returned to respondent-mother's care, they were removed after approximately two weeks because she was intoxicated while caring for them, left them alone, and had altercations with respondent-father and her neighbors. When the children were removed from her care, there was little food in the house and it was in an unsanitary state. During parenting time, she had difficulty redirecting the children and would behave inappropriately in front of her children, such as being verbally or physically abusive toward DHHS workers. She showed up to one parenting time with a blood alcohol level of 0.03%. At the same parenting time, she allowed her children to eat food off of the bathroom floor. Her parenting time was eventually suspended for these behaviors. She did not want to work with a parenting partner and had been refused continued parenting coaching because of her inappropriate behavior. Respondent-mother did not show improvement in her ability to parent her children, even after attending parenting classes and working with a parenting coach.

At the time of the termination of her parental rights, respondent-mother had not provided any documentation to the DHHS regarding income. She also had become incarcerated for a charge

involving felonious assault on her neighbor. DHHS workers had not been to respondent-mother's home since February 2024 and so the trial court could make no factual finding regarding the state of her housing.

Given the documented lack of progress, we are not left with a definite and firm conviction that the trial court erred when it found that no reasonable likelihood existed that the conditions that led to the adjudication would be rectified by respondent-mother within a reasonable time considering the children's ages. See *In re White*, 303 Mich App at 710. Therefore, the trial court did not clearly err by finding that clear and convincing evidence established grounds for termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*).

As one statutory ground is sufficient to terminate and termination was appropriate under MCL 712A.19b(3)(c)(*i*), we need not and do not address any additional statutory grounds for termination. *In re HRC*, 286 Mich App at 461.

## IV. BEST INTERESTS OF THE CHILD

Both respondents argue that the trial court erred in finding that termination of their parental rights was in the best interests of their respective children. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The petitioner bears the burden of proving that termination is in the child's best interests by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. In making a best-interest determination, the court's focus should be the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016).

The trial court may consider the following factors when deciding whether termination serves the children's best interests: (1) the child-parent bond; (2) the parent's parenting capabilities; (3) the child's need for permanency, stability, and finality; and (4) advantages presented by a foster home relative to the parent's home. *In re Olive/Metts*, 297 Mich App at 42. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 713-714. The child's placement with relatives is an additional, "explicit" factor for trial courts to consider in determining whether termination of a party's parental rights serves the child's best interests. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Placement with relatives weighs against a termination of parental rights. *Id*. Moreover, the "trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42. Again, we address each respondent in turn.

## A. RESPONDENT-FATHER

Respondent-father argues the trial court erred by finding termination of his parental rights was in the children's best interests. We disagree.

As an initial matter, we note that respondent-father has also waived his best-interest argument by failing to list it in the questions presented. *Lowrey*, 342 Mich App at 119 n 5. Regardless, termination of respondent-father's parental rights was in each child's best interests.

A preponderance of the evidence in the record supports the trial court's decision that termination of respondent-father's parental rights served the best interests of MH1, MH2, MH3, and TLH. Respondent-father's argument focuses on his assertion that he had a bond with his children. The trial court acknowledged that each child had varying degrees of a bond with respondent-father and that he acted appropriately with the children during visits. However, the bond the children had with respondent-father was not one of a child and parent because each child did not look to him for comfort or to have their needs met. Whatever bond he had with each child was also diminished by the fact that he stopped visiting his children for months at a time. As such, this factor favored termination. Moreover, despite the pendency of the case over approximately two and a half years, respondent-father lacked overall progress in his parent-agency agreement, as evidenced by the cessation of his visits, lack of housing, unwillingness to address domestic-violence concerns, and failure to provide financial support to his children. Respondent-father's lack of progress supported the trial court's decision to terminate respondent-father's parental rights.

The trial court further acknowledged that the four children required permanency and stability. They were currently with a relative placement; however, that relative only expressed interest in adopting JF. As such, there was not an express plan regarding the placement for these children. Even with this uncertainty, termination would move each of the four children toward permanency and stability because the older children had been pending in these proceedings for approximately two and a half years and TLH had lived almost his entire life away from respondent-father. The children showed growth and improvement in their maternal aunt's care and in their foster placements. Additionally, they were no longer medically and dentally behind. Respondent-father's lack of stable housing further suggested that he would be unable to provide the children with stability. This factor favored termination.

When considering respondent-father's lack of appropriate bond with his children, his lack of progress in his parent-agency agreement, and the children's need to be in a stable and permanent placement, a preponderance of the evidence in the entire record supported the trial court's determination that termination of respondent-father's parental rights served the children's best interests. Accordingly, the trial court did not err by terminating his parental rights.

B. RESPONDENT-MOTHER

Respondent-mother argues that the trial court erred in terminating her parental rights to her children because it was not in their best interests. We disagree.

A preponderance of the evidence in the record supports the trial court's decision that termination of respondent-mother's parental rights served the best interests of JF, MH1, MH2, MH3, and TLH. The trial court acknowledged that there was a bond between JF and respondent-mother; however, her bond with each younger child was diminished. Respondent-mother did not demonstrate that she could appropriately parent the children. Respondent-mother attended a majority of parenting time; however, she did not learn to interact appropriately with her children.

She would not redirect her children even when told to by staff. She expressed an inability to interact with them, such as being unable to play with toys with the children. She declined services, such as a parent partner, that could have helped her develop parenting skills. She would behave inappropriately in front of the children, such as being heavily intoxicated or verbally and physically abusive toward support staff. She let the children eat food off of the floor. Additionally, when the children were returned to her care, respondent-mother left the children unsupervised. The record reflected that respondent-mother lacked and never developed the ability to properly care for her children. These factors favored termination.

The record likewise indicated that respondent-mother failed to comply with and benefit from her parent-agency agreement. Respondent-mother participated in substance-abuse and mental-health services, but continued to abuse alcohol and showed no progress in caring for her mental health throughout the case. She behaved erratically, showed up heavily intoxicated at a parenting time, and was hyperverbal at the termination hearing. Her parenting time was suspended and she was dismissed from parenting coaching for her inappropriate behavior. Respondent-mother also became incarcerated at several times during the case. Her legal issues remained pending at the time of the termination hearing. Finally, there was an unaddressed history of domestic violence between respondents-parents, for which respondent-mother refused to attend the recommended domestic-violence classes. The record does not indicate that respondent-mother progressed or overcame the issues that brought the children into the trial court's jurisdiction. This factor favored termination.

Additionally, the trial court considered that the children needed permanency, stability, and finality because of their young ages and experiences with having been in multiple different placements. The case had been ongoing for approximately two and a half years. The children ranged in age, with JF being the oldest at eight years old and TLH being the youngest at one year old. The children were all currently placed with their maternal aunt, which generally weighs against termination. See *In re Mason*, 486 Mich at 164. However, their maternal aunt was only able to adopt JF. Although there was not an express plan for placement of the four younger children, this factor still favored termination. Even if the four younger children were separated for adoption, they would have more stability than respondent-mother could offer. The older children had been pending in these proceedings for approximately two and a half years and TLH had lived almost his entire life away from respondent-mother. The children had all shown growth and improvement while in their maternal aunt's care or in foster care and were no longer behind in their medical and dental health. In contrast, respondent-mother lacked and failed to develop the ability to recognize and care for the children's needs. This factor favored termination.

When considering respondent-mother's lack of progress in her parent-agency agreement, her failure to benefit from it, her inappropriate and at times dangerous behavior, and the children's need to be in a stable and permanent placement, a preponderance of the evidence in the entire record supported the trial court's determination that termination of respondent-mother's parental

rights served the children's best interests. Therefore, the trial court did not clearly err when terminating respondent-mother's parental rights.

Affirmed.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi